*Chittenden,*
December,
1825.

## Park Brown, *Administrator of Samuel Brown*, vs. Jas. L. Sawyer.

The lands of a minor, being sold under an act of Congress laying a direct tax, the purchaser agreed, that if his guardian would quiet a claim of a third person, he would quit-claim his title under the United States' sale, to the minor, for the tax and interest.

The guardian did quiet the claim, and the purchaser then refusing to quit-claim, without receiving a further sum, the guardian paid such further sum, and received the deed, being ignorant of the right of the minor under the act of Congress, to redeem the land within two years after he should come of age.—*Held,* that the money thus obtained, was received wrongfully, and might be recovered back, in an action of general *indebitatus assumpsit,* for money had and received.

*Held,* That the maxim, "that ignorance of the law excuseth no man," is not applicable to the ignorance of the guardian of the right of his ward, under the Act of Congress, to redeem the land about which he was contracting.

*Held,* That a recovery of the land by the minor, in an action of ejectment, was a sufficient shewing of title in the minor, for the purposes of this action.

Gross inadequacy of price, is evidence, from which a jury may presume fraud or mistake, if there be not circumstances in the case which rebut the presumption.

THIS was a motion for a *new trial,* founded on exceptions to the opinions of the judge expressed in his charge to the jury, and which were certified as follows:

This was an action of *indebitatus assumpsit,* claiming three hundred dollars, for so much money had and received by the defendant, to the plaintiff's use. Plea—the *general issue,* and verdict for the plaintiff.

On the trial of the cause, the plaintiff offered evidence tending to prove that, in the year 1816, *Samuel H. Brown,* then and yet a minor, claimed certain lands, in the town of Charlotte, and *Samuel Brown,* his father, commenced a suit in the name of his said son, in Chittenden county court, to recover the same; that after the commencement of said suit, and previous to September, 1817, the land was sold for the direct tax, and purchased by Sawyer. At the September term of said court, 1817, the names of *Farrand* and *Sawyer* were entered as attorneys for said minor, to prosecute his suit aforesaid, and continued on the docket, till final judgment: that the day before the time of redemption ran upon said land, one *Nathaniel Martin* called on Sawyer, and informed him that the land was likely to run out: and Sawyer agreed that if it did, Martin should be considered as the first applicant for the purchase of it; and that he, Sawyer, in case he got a deed, would release his title for $300. That, at this time, Martin undertook to inform Sawyer, that the land claimed by Brown, was set in the assessment to one *Keeler.* Sawyer told him he need not tell him any thing about the land, for he had been Brown's counsel in obtaining the land. Martin procured the deed from the collector, and brought it to Sawyer. Sawyer then said he was sorry he had agreed to deed to Martin; and if Martin would relinquish his claim, and he and Brown would settle certain business between them, he would release his claim to the land, to Brown, for the money he had paid for the taxes and interest: that Martin informed Brown of this, and they settled. Brown and Martin called on Sawyer,

Chittenden,
December,
1825.

Brown
vs.
Sawyer.

who then refused to deed to Brown, unless he would pay him $300; and represented to Brown, that his title to the land was good, and he could convey a good title to Brown. The deed from the collector was present, and contained a clause, that the same should be void, on the said minor's paying to Sawyer the amount of the consideration thereof, and interest, within two years after he should arrive at full age; but the deed was not read, and Martin, who had brought it from the collector, at Middlebury, did not know that it contained such a clause; nor did it appear that Brown knew it. Brown then paid Sawyer $300, and took from him a quit-claim deed of the land. Judgment was rendered in the suit of the minor, to record the said land, at the February term of Chittenden county court, 1819, and the damages and cost were settled March 6, 1819: the deed from the collector was dated April 2, 1819. The defendant introduced Judge *Farrand* as a witness, who testified, that he was employed to attend to the said suit for the minor; that he did not know that Sawyer was engaged, and does not know whether he assisted him at the trial or not; but that Sawyer generally assisted him in trials, by taking minutes, &c.; that he made out the account for the fees in his own name, received them, and gave Sawyer no credit. He further testified, that he advised Sawyer to release the land to Brown, for what he paid for it; and that he and Brown had a conversation about the business.

The Court gave in charge to the jury, that, if they found from the testimony, that the defendant had, by representing that he would convey the land to the plaintiff for the tax and interest, if he would quiet the claim of Martin, induced the plaintiff to quiet Martin's claim, and after the plaintiff had done so, would not thus convey, without the plaintiff would pay to him the sum of $300; and, by taking advantage of the plaintiff's situation, and by representing his own title to the land as absolute, when it was not so, had induced the plaintiff to enter into the contract, it would amount to such a deception, as that the plaintiff would be entitled to recover back the money. That gross inadequacy of price alone, if found, was evidence from which the jury would be warranted in presuming fraud or mistake, unless there were other circumstances in the case which would rebut the presumption. They also charged the jury, that, if they believed from the evidence, that Brown paid this money through mistake, or from an ignorance of the law, as it respected the rights of the minor in relation to the time allowed him to redeem the land quit-claimed by the defendant, whether the defendant was also mistaken on that point or not, and such mistake or ignorance was the cause of the plaintiff's paying the money for the deed, the money could not be retained by the defendant in good conscience, and in either case, they would find for the plaintiff, to recover the amount paid to the defendant, after deducting the amount of the tax and interest, on the land, paid by the defendant. But if they believe, from the testimony, that the plaintiff

*Chittenden,*
December,
1825.

Brown
*vs.*
Sawyer.

had entered into the contract, with a knowledge of the rights of the minor, and had not been deceived or entrapped by the representations of the defendant, he would not be entitled to recover the money back by this action; in which case, the defendant would be entitled to their verdict for his costs.

To which several opinions of the Court, the defendant excepted; and the exceptions were certified and allowed by the judge.

*Allen,* in support of the motion.   The defendant contends,

1. That the judge should have charged the jury, that if any action laid, it was not general *assumpsit;* but a special action on the case.   But,

2. That *no* action would lie, till plaintiff should have tendered to defendant, a release of all the interest acquired by said deed; in other words, plaintiff should have rescinded the contract, and both parties been placed in *statu quo.—Weston* vs. *Downes, Doug.* 23.— *Coop.* 818.—*Lawes, on pleading, from p.* 28, *to p.* 35.

3. The judge should have charged the jury, that plaintiff must show his ward, S. H. Brown, to have been the legal owner of the land; otherwise the plaintiff could not recover.   There was no proof that Brown, the minor, had any title to the land. The guardian might have made this contract to obtain it.   It does not appear but that Brown now holds the land, by virtue of the title acquired by Sawyer.   If Brown was not the owner, he could not redeem after two years from the sale.

4. The charge of the judge was incorrect in this.—"The Court charged the jury, that, if they found from the testimony, that defendant had, by representing that he would convey the land to plaintiff for the tax and interest, if he would quiet the claim of Martin, induced plaintiff to quiet Martin's claim, and after Brown had done so, would not thus convey, without the plaintiff would pay to him the sum of $300; and, by taking advantage of plaintiff's situation, and by representing his own title as absolute, when it was not so, had induced the plaintiff to enter into the contract, it would amount to such a deception, that plaintiff would be entitled to recover back the money?"—which charge was obscure, unauthorized by the testimony, and calculated to mislead the jury.   It is incorrect in this; "that if the defendant had agreed to deed, on the condition of quieting Martin's claim, and afterwards refused to carry it into effect, such a breach of contract would constitute the ground of a *distinct* action.   And, if any such agreement existed, it is apparent that Brown and Sawyer afterwards compromised it.   If the plaintiff had a claim on the defendant to deed the land, on payment of the tax and interest, yet, the plaintiff could not compromise his claim, and then recover back the money he paid in compromise.

5. "That gross inadequacy of price, alone, if found, was evidence from which the jury would be warranted in presuming

fraud or mistake, unless there were other circumstances in the

case, which would rebut the presumption." The defendant has reason to object to this paragraph of the charge, on account of its obscurity, and its evident tendency to create in the minds of the jury a vague belief of fraud in the conduct of the defendant, not warranted by the testimony. He objects more strongly to the application of this principle to the present case. If a debtor shall dispose of property, for less than its value, a creditor claiming the property, might insist upon the "inadequacy of price" as one proof of fraud. But is it true, as a general proposition ? If so, almost every fair bargain which is always more advantageous to the one party than to the other, might and would become the subject of litigation Besides, by what means could the jury ascertain the precise value of this *vendue* title ?

6. "That if they believed from the evidence, that Brown paid this money, through a mistake, or from ignorance of the law as it respected the rights of the minor, in relation to the time allowed him to redeem the land quitclaimed by the defendant, whether the defendant was also mistaken on that point or not, and such mistake or ignorance was the cause of the plaintiff's paying the money for the deed, the money could not be retained by the defendant, in good conscience." This part of the charge is clearly contrary to law. It is an ancient maxim, that—*ignorantia legis, non excusat.* The defendant merely employs the language of the law itself, when he contends that the money having been paid with the knowledge, or the *means of knowledge* of all the circumstances, cannot be recovered back again.—*Bilbie* vs. *Lumly,* 2 *East,* 471, *and note.*—*Stevens* vs. *Lynch,* 12 *East,* 38 *and note.*—1 *Esp. R.* 84.—*Doug.* 471.—*Lundie* vs. *Robertson,* 7 *East.* 231.

How can ignorance of the law be proved ? Brown's assertion that he was ignorant, is not evidence ; if it were, any person might make testimony in his own cause. The presumption is, that every person is acquainted with the publick laws of the country in which he lives.

*Thompson,* contra. This is an action founded in equity, by which the plaintiff seeks to recover money which the defendant cannot conscientiously withhold from him. The defendant, by his promise to release the land, had induced the plaintiff's intestate to settle a controversy with, and relinquish a claim against Martin. He was, therefore, bound to perform that promise, without further consideration. His refusal to perform it, under such circumstances, without the receipt of the money paid, was extortion.—*Moses* vs. *McFarlin,* 2. *Burr.* 1012.—*Astley* vs. *Reynolds,* 2 *Strange,* 915.—*Smith* vs. *Bromley, Doug. R.* 696.— *Cockshot, et al.,* vs. *Bennett, et al.* 2 *Term Rep.* 763.

Sawyer's representing his title to the land to be absolute and valid, and declaring his ability to convey a good title, when he had a defeasable title, only, and could convey no other, was a *fraud* upon Brown, and money obtained by fraud cannot, in good conscience, be retained.—2 *Burr. Rep.* 1010.

*Chittenden,*
December,
1825.

~~~~~

Brown
*vs.*
Sawyer.

The fact that Brown paid the sum of $300, as a consideration for the release from Sawyer, when he might have redeemed the land by paying a very few dollars, is, unexplained, conclusive evidence that the $300 were paid and received through fraud or mistake, and that Brown was wholly ignorant of the right of the minor. And money obtained through fraud, or paid through the mistake of either party, or through ignorance of the law or material facts, may be recovered back.—*The Union Bank* vs. *the Bank of the U. S.* 3 *Mass. R.* 74.—1 *Esp. Dig.* 2, 4.—*Crips* vs. *Reade,* 6 *Term R.* 606.—2 *Bosanq. & Pul.* 467.—*Cobden* vs. *Kendrick,* 4 *Term R.* 431.

If Brown, at the time of paying the money, was ignorant of the proviso in the collector's deed, and this fact must have been found by the jury, the defendant is bound to refund it.—*Bize* vs. *Dickason, et al, assignees of Burtenshlag,* 1 *Term R.* 285.

*Turner,* for the defendant, *in reply.* The present is an application for a new trial, and is addressed to the sound discretion of the Court; not that discretion, which, like a chancellor's conscience, may be great or small, but a *legal* discretion, whose course is traced in the authorities, and matured by the wisdom of ages.

This verdict affects the moral character of the defendant, and ought not, therefore, to stand, if there is even a probability of its working an injustice. The *reasons* for granting a new trial must be collected from the *whole* evidence, and from the *nature* of the case, considered under *all its circumstances.* It is immaterial *where* the fault arises, by which a wrong verdict is produced—whether from a mistake of the Court, of the jury, from errors of counsel, or from false testimony.—*Bright, executor,* vs. *Eynon.* 1 *Burr,* 390.

But, admitting the fact, that the title conveyed was not worth the money paid—*this* action will not lie. It must be a *special action on the case.*

No action of this nature can be brought by a party to a contract, till he has *rescinded* his contract. He must place the defendant back, in the same situation he was, before the contract was made. The plaintiff has not returned this title; he is rolling it, as a sweet morsel, under his tongue.

It is true this title of Sawyer's was subject to be defeated; but not in the way it was defeated—by *Brown's* carrying it off!

It was important that Brown should have shown, that he *had a title* to this land, at the time the deed was given; *otherwise,* Brown practiced a fraud on *Sawyer,* and on Martin also. It does not appear that Brown *had* any title. It is *said,* in the case, that Brown had *recovered.* But he might have recovered, *without title;* as was done in the St. Albans case.

As to the fraud of Sawyer—all know what fraud is. It is a deception with a *scienter* on the one side, and ignorance on the other. Where is that deception here? Sawyer could not deceive Brown, in the *fact* of the minority of his son, nor in the

Chittenden,
December,
1825.

Brown
vs.
Sawyer

*law*, of his right to redeem ; for none can plead ignorance of the law : if so, all our culprits would go free!

But, it is said, Sawyer *said* he had a good title, and knew all about it. He knew he had a *vendue title*—Brown knew the same.

It is said Sawyer was Brown's *counsel*, and therefore *must* know! But the *agent* cannot know more than his *principal*, of whom he gets his information.

But *Farrand* advised Sawyer to give up his title, for the money advanced! Was there any thing wrong in Sawyer's not following this advice? Nothing.

The jury ought to have been instructed, that the legal presumption was, that Brown *knew* the contents of the deed ; and also, (if any instruction was to be given,) that the testimony of *Martin*, that Sawyer agreed to give up the land to Brown *for nothing*, could not be true.

The judge charged the jury, that if Brown was ignorant of the law, the money could not be retained. This was wrong.

Abstract principles, having no connexion with the case, are remarkably calculated to mislead a jury. Such was the instruction respecting *inadequacy of consideration ;* for, the jury could not determine the value of the title.

The evidence is detailed, the charge is recited, the counsel objected to the whole in gross ; all, *all* is wrong ; and any part sufficient to overthrow the verdict.

The opinion of the Court was delivered by

HUTCHINSON, J. The defendant insists, that the charge given by the Court to the jury is incorrect, in many particulars. The first clause of the charge alludes to the testimony, which tends to show that the defendant, after agreeing to deed to Martin for $300, agreed, that if the plaintiff would quiet the claim of Martin, by some settlement to be made between them, he, the defendant, would deed to the plaintiff, on receiving the tax and interest, and that the plaintiff did so settle and quiet Martin's claim ; and yet, the defendant refused to deed to the plaintiff for the tax and interest, but claimed and received the sum of $300, which the plaintiff paid, rather than lose the land. It seems the Court charged, that if the jury so found the facts, they ought to find for the plaintiff. This part of the charge is surely correct ; for if these facts are true, the defendant was bound by his first contract, to deed to the plaintiff, on receiving the tax and interest, and his taking the advantage of the plaintiff's situation, and exacting a larger sum, after the plaintiff had complied by quieting Martin's claim, was wrong, and was what the law deems extortion ; and the money so exacted, could not be retained by the defendant. And, this action for money had and received, well lies, in such a case : and that, without the plaintiff's tendering to the defendant a release of title ; for the plaintiff claims to recover, and has recovered, such a sum only, as makes it right for the plaintiff to retain the land, to wit, the

Chittenden,
December,
1825.

Brown
vs.
Sawyer.
sum received by the defendant, above what was comprised in the first contract. The Court also consider, that the showing the recovery of the land by the minor, in an action of ejectment, was sufficient showing of title in the minor, for the purposes of this action.

The next clause of the charge is, that "gross inadequacy of price, alone, if found, was evidence from which the jury would be warranted in presuming fraud or mistake, unless there were other circumstances in the case, which would rebut the presumption."

This part of the charge presents the true doctrine relating to inadequacy of price. It is not, of course, conclusive proof of fraud or mistake----but is, or may be, a ground of presumption of such fraud or mistake, and may be conclusive, when there is nothing to rebut. If there were nothing in the present case, but a clear, unquestionable right in the plaintiff to receive from the defendant a deed of the premises, on paying some ten or fifteen dollars, and yet the plaintiff was induced by the defendant to give three hundred dollars for such deed, this could only be accounted for on the ground of fraud or mistake. Hence, such might well be presumed by the jury.

The remaining clause of the charge, authorizes the jury to find for the plaintiff, if they should believe, from the evidence, that the plaintiff paid this money through mistake or ignorance of the law, as it respected the rights of the minor in relation to the time allowed him to redeem; and that such mistake or ignorance was the cause of the plaintiff's so paying the money. To this part of the charge, the defendant strongly objects, and urges the maxin, that ignorance of the law excuses no man. This maxim, if always adhered to, bears very hard in many cases. It is usually relaxed by those exercising pardoning powers, in favour of those in whom such ignorance satisfactorily appears. But, it is urged, that such ignorance is incapable of proof, and a man may feign it, if it be admitted as an excuse. This may seem plausible; and so may objections be raised, in some degree, to every use of human testimony, that it may carry with it unsuspected imposition. And if a man is in fact, ignorant of the law, and acts as he would not, if such ignorance were dispelled, and he is able, by proper evidence, to satisfy the jury that he did not, and, perhaps, could not know the law, there is no good reason why this should not, as to him, be treated as a fact in the case, and he have the benefit of his testimony. And, cases are not unfrequent, in which a man acquainted with the law, might gain an unwarrantable advantage over one wholly ignorant of such law, if shielded by this maxim, in its full extent.

But we should consider the law laid down by the judge, as applicable to the case, according to his intention, and as he virtually explains himself by his allusions to the minor's rights to redeem, after he should become of age.

That may well be treated as a fact in this case. It was a right delineated in the deed from the collector to the defendant; and

*Chittenden,*
December,
1825.

Brown
*vs.*
Sawyer.

Martin, who had been to the collector and procured said deed from the collector to the defendant, did not know of this right. And the jury might well presume the plaintiff as ignorant as Martin. That there was such a law of the United States, which probably but few of the citizens had ever felt any interest in reading, and that it was applicable to the rights of this minor, may well be treated as a fact; and a very important one too, in this case. This Court sanction this part, also, of the charge, and in so doing, we are supported by authority. Two or three cases cited by the plaintiff's counsel have a bearing upon this point; but the most direct is *Bize* vs. *Dickason, et al. assignees of Bartenshlag,* in the 1 *Term Rep.* 285. There the plaintiff paid to the assignees the full amount of the bankrupt's debt against him, without deducting his debt against the bankrupt, which ought to have been offset, and the balance only paid to the assignees. The plaintiff, before any dividend made of the bankrupt's estate, gave notice to the assignees of his present claim, and brought this action to recover back that money which he had a right to have retained. The plaintiff recovered; and it is treated as money paid by mistake. But there was, and could be, no other mistake than acting in ignorance, or forgetfulness of the *statute* which gave the plaintiff the right to offset his claim, and pay the assignees the balance only. And in that case the proof was not difficult; for it is impossible any one should believe that *Bize,* knowingly, understandingly and designedly paid the whole amount with a view to receive back merely a dividend on his claim, when the law gave him security for his whole debt, by allowing him to retain it in the first instance.

Alike strong, must have been the grounds of presumption presented to the jury, in the present case. If the jury believed that the plaintiff gave three hundred dollars for the deed in question, when he had a clear right to such deed for a small sum, under his first contract with the defendant, and he, in behalf of the minor, or the minor himself had a clear right to defeat that deed, wholly, by paying the tax and interest, it is impossible they should doubt the plaintiff's paying the $300, through mistake or ignorance of these rights.

Whatever has been urged, on the ground of the plaintiff's purchasing in order to strengthen the title of the minor, is sufficiently answered by a reference to the first contract with the plaintiff, and comes under the first part of the charge.

Upon the foregoing views of the case, the Court direct judgment to be entered for the plaintiff, upon the verdict of the jury.

If it were necessary for the Court to resort to the situation of the parties contracting, and their means of knowledge of material facts, the case shows that the defendant acted as counsel for the guardian of the minor, in recovering this land, and must have bid off the land while he was thus acting as counsel. The defendant must of course, be presumed acquainted with those facts, much better than the plaintiff, and ought to have made a full disclosure of them to the plaintiff, and also, be-

18·

*Chittenden,*
*December,*
*1825.*
╰╼╮╭╼╯
Brown
*vs.*
Sawyer.

ing a lawyer, must have had better knowledge of the law, than the plaintiff; and it appears nothing was said by him to the plaintiff, which gave Martin any knowledge of the minor's rights.

Contracts between a lawyer and his client, upon a subject, concerning which he acts as lawyer, should always be received with some degree of jealousy. There is no equality between them. The moment the attorney assumes an interest counter to that of his client, he enjoys a great advantage by his superior knowledge of whatever concerns the matter contracted about. The Court, however, support the verdict upon the grounds before mentioned.

*J. C. Thompson,* for the plaintiff.

*Heman Allen, Bates Turner,* and *Gamaliel B. Sawyer,* for the defendant.